# Exhibit B

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                FOR THE COUNTY OF LOS ANGELES

3     DEPARTMENT CCH 14              HON. TERRY A. GREEN, JUDGE

4
      MAYRA NORIS,                   )
5                                    )
              PLAINTIFF,             )
6                                    )
          V.                         ) CASE NO. BC589882
7                                    )
      BAYER ESSURE, INC., ET AL.,    )
8                                    )
              DEFENDANTS.            )
9     _____)

10

11              REPORTER'S TRANSCRIPT OF PROCEEDINGS

12                  TUESDAY, APRIL 26, 2016

13    APPEARANCES:

14    FOR PLAINTIFF:        MAYRA NORIS

15                          SHOOP LAW
                            BY: DAVID R. SHOOP, ESQ.
16                          8383 WILSHIRE BLVD.
                            SUITE 840
17                          BEVERLY HILLS, CALIFORNIA 90211

18    FOR DEFENDANT:        BAYER ESSURE, INC.

19                          SIDLEY AUSTIN LLP
                            BY:  ALYCIA A. DEGEN, ESQ.
20                               REBECCA K. WOOD, ESQ.
                            555 WEST FIFTH STREET
21                          SUITE 4000
                            LOS ANGELES, CALIFORNIA 90013
22
      FOR DEFENDANT:        PENELOPE VELASCO, M.D.
23
                            CARROLL, KELLY, TROTTER,
24                          FRANZEN, MCKENNA & PEABODY

25                          BY:  KAYTEE VOTA COSTA, ESQ.
                            111 W. OCEAN BLVD.
26                          14TH FLOOR
                            LONG BEACH, CALIFORNIA 90801
27                          (CONTINUED)

28    JOB NO. 127675        MARCO NEILLY, CSR NO. 13564

```
 1      APPEARANCES (CONTINUED):

 2      FOR DEFENDANT:              DIGNITY HEALTH

 3                                  BRANDMEYER & PACKER LLP

 4                                  BY:  PAUL M. CORSON, ESQ.
                                         (VIA COURTCALL)
 5                                  245 S. LOS ROBLES AVE.
                                    SUITE 600
 6                                  PASADENA, CALIFORNIA 91101

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

MASTER INDEX

APRIL 26, 2016

CHRONOLOGICAL AND ALPHABETICAL INDEX OF WITNESSES

NONE

EXHIBITS

NONE OFFERED

```
1    CASE NO:                    BC589882

2    CASE NAME:                  NORIS V. ESSURE, INC., ET AL.

3    LOS ANGELES, CALIFORNIA     TUESDAY, APRIL 26, 2016

4    DEPARTMENT 14               HON. TERRY A. GREEN, JUDGE

5    REPORTER:                   MARCO NEILLY, CSR 13564

6    TIME:                       8:45 A.M.

7    APPEARANCES:                (AS NOTED ON THE TITLE PAGE)

8

9

10            THE COURT:  MAYRA NORIS VERSUS BAYER ESSURE.

11            MS. COSTA:  GOOD MORNING, YOUR HONOR.  KAYTEE

12   COSTA ON BEHALF OF DR. VELASCO.

13            MR. SHOOP:  GOOD MORNING, YOUR HONOR.  DAVID

14   SHOOP ON BEHALF OF THE PLAINTIFF.

15            MS. DEGEN:  ALYCIA DEGEN ON BEHALF OF BAYER

16   DEFENDANTS.  ALSO WITH ME IS MY COLLEAGUE, REBECCA WOOD.

17   AND WE HAVE A MOTION FOR ADMISSION, PRO HAC VICE, WHICH

18   WE UNDERSTAND IS NOT OPPOSED.

19            THE COURT:  OKAY.  HAVE A SEAT PLEASE.

20            MR. CORSON:  GOOD MORNING, YOUR HONOR.  PAUL

21   CORSON ON COURTCALL FOR DIGNITY HEALTH.

22            THE COURT:  GOOD MORNING.  ANYBODY ELSE ON

23   COURTCALL?  OKAY.

24            MS. WOOD, WHERE YOU FROM?

25            MS. WOOD:  WASHINGTON D.C., YOUR HONOR.

26            THE COURT:  WASHINGTON D.C.  SOUNDS LIKE AN

27   IMPORTANT PLACE.

28            MS. WOOD:  BUT MY FATHER WAS BORN HERE IN
```

1    LOS ANGELES.

2              THE COURT:  THEN I'LL GRANT THE MOTION.

3              MS. WOOD:  THANK YOU, SIR.

4              THE COURT:  OKAY.  I'LL SIGN THIS.

5              MS. WOOD:  THANK YOU.

6              THE COURT:  BOY, THIS IS AN INTERESTING TWIST

7    ON PREEMPTION.  AND, YOU KNOW, I'VE HAD A LOT OF THESE

8    CASES, NOT WITH YOU FOLKS, BUT WITH THE INFUSED PEOPLE

9    WHO WERE HERE.  AND, YOU KNOW, THERE'S A LOT OF DEBATE

10   ON WHAT THE LAW IS AND, YOU KNOW, I HAD BEEN FOLLOWING

11   COLEMAN, AND THEN THOSE CASES WHICH REALLY GIVE A

12   HAIRCUT TO, YOU KNOW, A LOT OF THESE FDA CLAIMS THAT

13   ARISE UNDER THE FDA -- I THINK ARISES UNDER THE FDA.

14             AND YOU'RE SORT OF LEFT WITH THE STRICT

15   LIABILITY NEGLIGENCE, FAILURE TO INFORM OF ADVERSE

16   EVENTS UNDER COLEMAN, AND YOU HAVE THE ADDITIONAL

17   PROBLEM.  AND, I MEAN, ALL THESE CASES HAVE A PROBLEM,

18   AND THAT IS A CAUSATION, HOW DO YOU ALLEGE CAUSATION.

19   WHEN I READ THIS -- I HADN'T READ THIS.  THIS IS MY

20   FIRST TIME, I GUESS, READING A LOT OF THIS, AND I DIDN'T

21   REALIZE IT, THAT AT LEAST THE ALLEGATIONS ARE THE DOCTOR

22   KIND OF WENT OFF ON HIS OWN WITHOUT TELLING THE PATIENT,

23   IMPLANTED THIS DEVICE.

24             I MEAN, I DON'T KNOW IF IT'S TRUE OR NOT.

25   THEY'RE ALLEGATIONS, YOU KNOW, THAT I CAN'T SAY I'VE

26   SEEN IN A CASE SO FAR, BUT THAT MAKES YOUR CAUSATION

27   REALLY TOUGH.  I MEAN, SO WHAT IF THERE WERE ADVERSE

28   EVENTS THAT WEREN'T PASSED ON TO THE FDA.  I MEAN, SO

1     WHAT.  IT CAME AS A SHOCK TO THE PLAINTIFF THAT SHE WAS

2     EVEN TALKING ABOUT BAYER AND THIS DEVICE.  I GATHER SHE

3     THOUGHT SHE WAS TALKING ABOUT A -- SOMETHING ELSE.  BUT

4     ANYWAY.

5          SO THAT'S YOUR VIABLE THEORY.  ON YOUR OTHER

6     THEORIES, THE PROBLEM WITH A MANUFACTURER'S DEFECT IS

7     THIS IS ALL -- THE MANUFACTURING PROCESS HAS ALL BEEN

8     SET FORTH BY THE FDA.  SO YOU HAVE TO ALLEGE A DEVIATION

9     FROM THE MANUFACTURING PROCESS.  NOW, YOU ALLEGE HERE

10    THAT -- YOU KNOW, I GET THIS IMPRESSION THAT BAYER WAS

11    MAKING THESE IN SOMEBODY'S GARAGE AND THEY'RE THROWN

12    TOGETHER SOME PARTS AND, YOU KNOW, IS AN UNLICENSED

13    MATERIAL, UNLICENSED FACILITIES, LIKE, YOU KNOW, AS I

14    SAID, SOMEBODY'S BACKYARD STILL AND THEY'RE MAKING

15    THESE.

16          MR. SHOOP:  I DON'T THINK WE ACTUALLY SAID

17    GARAGE, YOUR HONOR, BUT I DO THINK THAT WE ALLEGE --

18          THE COURT:  UNLICENSED FACILITY.

19          MR. SHOOP:  -- DEVIATION FROM THE CGMP.

20          THE COURT:  THIS IS BACKYARD STILL, YOU KNOW,

21    IN THE HILLS OF WEST VIRGINIA, THEY'RE MAKING UP THIS

22    STUFF.  BUT THERE STILL HAS TO BE A DEFECT ALLEGED.

23          MR. SHOOP:  AND HERE'S THE OTHER THING --

24          THE COURT:  HANG ON.

25          MR. SHOOP:  SORRY.

26          THE COURT:  THESE ARE ACTUALLY IMPORTANT

27    ISSUES, YOU KNOW.  BUT AS TO THE DESIGN DEFECT, YOU

28    KNOW, THE FDA APPROVED THE DESIGN, SO YOU'VE GOT TO

1    ALLEGE THAT THEY'VE DEPARTED FROM A DESIGN AS TO THE

2    MANUFACTURING DEFECT.  FDA APPROVED THE MANUFACTURING

3    PROCESS, SO YOU HAVE TO PROVE THAT THEY DEVIATED, AND

4    BOTH CASES YOU HAVE TO PROVE CAUSATION.  AS FAR AS

5    WARNINGS, WE GO THROUGH THIS WARNINGS THING ALL THE

6    TIME, AND THE FDA STAMPS A WARNING ON IT.

7            IF YOU THINK THE WARNING IS BAD, CALL THE FDA,

8    YOU KNOW, AND IF YOU THINK THAT BAYER CHEATED THE FDA,

9    FRAUD ON THE FDA AS IT WERE, WELL, THAT'S A DOJ ISSUE,

10   NOT A PRIVATE ISSUE.  AND THEN AS TO THE TRAINING, I

11   HAVE NEVER SEEN THIS.  I HAVE SEEN TRAINING -- YOU SEE

12   TRAINING IN CIVIL RIGHTS CASES.  THAT'S A VIABLE CIVIL

13   RIGHTS THEORY, THAT THE POLICE WEREN'T TRAINED TO DO

14   CERTAIN THINGS, UNDER 1983.

15           I HAVEN'T REALLY SEEN WHAT -- I DON'T KNOW WHAT

16   THE DUTY IS HERE FOR A MANUFACTURER TO TRAIN ON USE.

17   YOU GUYS HAVE TO EDUCATE ME ON THAT ONE.  I WANT TO HEAR

18   MORE ON THAT.

19           SO I GUESS I WAS A LITTLE INTERESTED IN THE

20   BACKYARD STILL.  IF YOU CAN ALLEGE THAT DOING THIS IN

21   THE GARAGE OR UNLICENSED FACILITIES OR UNLICENSED

22   MATERIAL SOMEHOW CREATED A DEFECT AND YOU CAN SHOW A

23   CAUSATION, I SUPPOSE THAT ONE MIGHT SURVIVE.

24           MR. SHOOP:  WELL, IT'S A DEVIATION FROM THE

25   TMA, WHICH WOULD MAKE THE PRODUCT ADULTERATED, WHICH

26   WOULD ESSENTIALLY FORM THE BASIS FOR A PARALLEL CLAIM,

27   WHICH WOULD CIRCUMVENT PREEMPTION, YOUR HONOR.  THAT'S

28   THE THRUST OF THOSE ARGUMENTS.

1          THE COURT:  OKAY.  WELL, I'LL TELL YOU WHAT,

2    WHERE I AM RIGHT NOW ON THIS, IS TO OVERRULE THE STRICT

3    LIABILITY, FAILURE TO WARRANT BASED ON ADVERSE EVENTS.

4    IF YOU CAN ALLEGE CAUSATION -- WHICH OUGHT TO BE AN

5    INTERESTING ARGUMENT, CONSIDERING THAT PLAINTIFF DIDN'T

6    KNOW ABOUT IT.  BREACH OF WARRANTY, I DON'T KNOW.  I'D

7    HAVE TO SUSTAIN THE BREACH OF WARRANTY.  I DON'T KNOW

8    WHAT THE -- TO WHOM THE WARRANTY WAS MADE.

9          I DON'T KNOW WHERE THE WARRANTY WORKS IN.  THE

10   DESIGN DEFECT AND MANUFACTURING DEFECT, I'VE NEVER SEEN

11   IT ALLEGED WHERE THERE'S BEEN DEVIATIONS AND THE

12   DEVIATIONS CAUSED A DEFECT WHICH CAUSED AN INJURY.  I'VE

13   NEVER SEEN THAT, YOU KNOW, WHICH IS INTERESTING.  SO YOU

14   WANT TO ENLIGHTEN ME ON HOW YOU CAN GET AROUND

15   PREEMPTION ON THAT?  BECAUSE YOU PRETTY MUCH HAVE TO, AS

16   YOU SAID, TO HAVE THE PARALLEL CLAIM.

17          MR. SHOOP:  SURE.  IT DOES HAVE TO BE A

18   PARALLEL CLAIM.  AND, AGAIN, THE PREDICATE OF AN

19   ADULTERATED PRODUCT WOULD BE A DEVIATION FROM A CURRENT

20   MANUFACTURING PRACTICE, AS ENUMERATED IN THE FEDERAL

21   CODES.  I THINK THAT IN THIS FIRST AMENDED COMPLAINT WE

22   HAVE SET FORTH A NUMBER OF THOSE, AND I ALSO THINK THAT

23   WE'VE SET FORTH A NUMBER OF WARNINGS ISSUES, AS YOU'VE

24   APPROPRIATELY ALLUDED TO.

25          BUT, ALSO, I WOULD RAISE THE POINT THAT THE FDA

26   HAS TAKEN ADMINISTRATIVE ACTION SINCE THE FILING OF THE

27   FIRST AMENDED COMPLAINT.

28          THE COURT:  WELL, THEY PUSHED BACK ON THAT.

1    MR. SHOOP: SIDNEY AUSTIN IS GOING TO PUSH BACK

2    PRETTY HARD ON ALL THIS STUFF, AFTER YOU UNCEREMONIOUSLY

3    BAILED OUT ON ME, YOUR HONOR, ON MY COGNER TRIAL.

4    THE COURT: WHAT'S THAT?

5    MR. SHOOP: REMEMBER THE COGNER TRIAL?

6    THE COURT: WAS THAT THE GAS COMPANY CASE?

7    MR. SHOOP: RIGHT.

8    THE COURT: WHAT HAPPENED WITH THAT?

9    MR. SHOOP: YOU HAD THE LOTTERY TRIAL GOING AT

10   THE TIME, SO WE GOT BUMPED TO JUDGE CUNNINGHAM. SO WE

11   TRIED THAT CASE A FEW WEEKS AGO BEFORE JUDGE CUNNINGHAM.

12   THE COURT: WHAT HAPPENED WITH THAT?

13   MR. SHOOP: WE PUT ON OUR CASE AND IT SETTLED

14   TO THE PARTIES MUTUAL SATISFACTION.

15   THE COURT: THE BEST POSSIBLE RESULT. MAXIMUM

16   IN FEES AND --

17   MR. SHOOP: I'M SUPPOSED TO SAY EVERYBODY WAS

18   HAPPY.

19   THE COURT: ACTUALLY, ON THE LOTTERY CASE, WHAT

20   HAPPENED WAS MY LOTTERY WINNER, MID-TRIAL, DECLARED

21   BANKRUPTCY.

22   MR. SHOOP: WE COULD HAVE TRIED THAT IN FRONT

23   OF YOU, YOUR HONOR. WE WOULDN'T HAVE HAD TO GO TO CCW.

24   THE COURT: SHE GOT KICKED IN BANKRUPTCY, AND

25   WE WERE GOING TO GEAR THIS UP FOR THE 15TH OF APRIL, AND

26   SHE WENT BACK TO BANKRUPTCY.

27   MR. SHOOP: BY THE WAY, JUDGE CUNNINGHAM WAS

28   VERY COMPLIMENTARY OF YOU. I THINK HE USED TO WORK WITH

1    YOUR WIFE AS WELL.

2            THE COURT:  YEAH, THEY WERE JUDGES IN PROBATE.

3    WHERE WERE WE, BY THE WAY, IN THIS DISCUSSION?  OH,

4    YEAH.  WHEN YOU WERE TALKING ABOUT THE DEFECTS.

5            MR. SHOOP:  I WAS TAKING ABOUT THE FDA

6    ADMINISTRATIVE ACTION, ACTUALLY.

7            THE COURT:  CONGRATULATIONS ON YOUR GAS COMPANY

8    CASE.

9            MR. SHOOP:  THANK YOU VERY MUCH, YOUR HONOR.  I

10   APPRECIATE THAT.  I THINK ALL PARTIES WOULD LIKE TO

11   THANK THE COURT FOR ITS GUIDANCE IN ENFORCE OF THAT RULE

12   BEFORE YOU.

13           THE COURT THANK YOU.

14           MR. SHOOP:  AT ANY RATE, ON FEBRUARY 29TH THE

15   FDA ORDERED THEIR --

16           THE REPORTER:  COULD YOU SLOW DOWN, PLEASE.

17           MR. SHOOP:  I'M SORRY.

18           FEBRUARY 29TH, 2016, THE FDA ORDERED BAYER TO

19   CONDUCT POST-MARKET SURVEILLANCE STUDIES REGARDING RISK

20   AND EFFICACY, AND NUMBER TWO, THE FDA WILL REQUIRE A

21   BOXED WARNING AND PATIENT DECISION CHECKLIST.  THIS WAS

22   ALL ON FEBRUARY 29, 2016, THIS CAME DOWN.  AND THEN

23   LASTLY, THE FDA ISSUED DRAFT GUIDANCE TO PROVIDE THE

24   PUBLIC AN OPPORTUNITY TO COMMENT ON THE LANGUAGE OF THE

25   PROPOSED WARNING.  SO THERE'S GOING TO BE A REVISED

26   WARNING, A BOX WARNING ON EACH NOW, YOUR HONOR.

27           SO, AGAIN, I WOULD LIKE TO HAVE THE OPPORTUNITY

28   TO BEEF UP THE WARNING ALLEGATIONS.

8

1          THE COURT:  OKAY.  WHAT ARE YOU GOING TO DO

2     ABOUT THE CAUSATION?  I MEAN, IF THIS WERE A CASE WHERE

3     A PATIENT WENT INTO HAVE A PROCEDURE AND SOMETHING WENT

4     WRONG, AND YOU HAD A DOCTOR WHO SAID --

5          MR. SHOOP:  SURE.

6          THE COURT:  -- "I'M A REALLY GOOD DOCTOR AND I

7     RESEARCHED ALL OF THIS AND I KNOW BAYER IS A FABULOUS

8     COMPANY AND THEY SAVE MILLIONS," WHICH IS TRUE.  THEY

9     PROBABLY SAVE MILLIONS OF LIVES AND DONE ALL THIS GOOD.

10    "AND I RELIED ON THIS AND NOW I FIND OUT IT WAS DONE IN

11    THE GARAGE WITH A BACKYARD STILL WHERE SOMEBODY IS

12    YELLING ZEKE GIVE ME MORE SOMETHING TO POUR IN.  NOW,

13    HAD I KNOWN, I NEVER WOULD HAVE USED IT."

14          THAT'S A GOOD CASE.

15          MR. SHOOP:  SURE.

16          THE COURT:  SO HOW ARE YOU GOING TO HEAR WHEN

17    IT WAS A SECRET?

18          MR. SHOOP:  AGAIN, THERE WERE MULTIPLE

19    DEVIATIONS FROM CURRENT GOOD MANUFACTURING PRACTICES.

20    THOSE ARE SET FORTH.  I THINK THAT THOSE SHOULD SURVIVE

21    PREEMPTION.  AND, ADDITIONALLY, THE WARNING ISSUES,

22    THEY'LL SURVIVE PREEMPTION PURSUANT TO THE STENGEL CASE,

23    YOUR HONOR.  SO I THINK NO MATTER WHAT, WE'RE GOING TO

24    BE ABLE TO GET TO DISCOVERY.  I KNOW BAYER HAS BEEN

25    VERY, VERY GOOD AND VERY, VERY EFFECTIVE AT PREVENTING

26    THESE CASES FROM GOING TO DISCOVERY.

27          THERE ARE CASES IN FEDERAL COURT IN

28    PENNSYLVANIA WHERE THE COURT HAS NOT PREEMPTED PHYSICIAN

1      TRAINING CASES. THEY'VE NOT PREEMPTED --

2              MS. WOOD: THAT'S ACTUALLY FALSE. THE EASTERN

3      DISTRICT OF PENNSYLVANIA ORDERED FROM JUDGE PADOVA,

4      ALLOWING --

5              THE REPORTER: I'M SORRY?

6              MS. WOOD: ALLOWING STENGEL, S-T-E-N-G-E-L,

7      LIKE CLAIMS TO GO FORWARD WHERE THE ALLEGATIONS OF

8      CAUSATION WERE MUCH MORE STRINGENT THAN THEY WERE HERE.

9      THE ALLEGATIONS WERE, THAT IF THE PLAINTIFF HAD KNOWN

10     ABOUT ADDITIONAL PERFORATIONS, SHE WOULD NOT HAVE

11     CONSENTED. THAT'S THE PROBLEM, AS YOUR HONOR HAS

12     IDENTIFIED CORRECTLY HERE ON CAUSATION.

13             AND THE ONLY OTHER CLAIM THAT WENT FORWARD

14     THERE WAS NEGLIGENCE MISREPRESENTATIONS. THE JUDGE

15     DISMISSED EVERYTHING ELSE, TEN OF 12 CLAIMS, AS

16     PREEMPTED, ALBEIT WITH LEAVE TO AMEND FIVE OF THOSE.

17     THERE ARE NO NEGLIGENT MISREPRESENTATIONS HERE, OF

18     COURSE, BECAUSE AS YOUR HONOR HAS IDENTIFIED, THIS IS A

19     BIT OF A DIFFERENT CASE, WHERE THE PLAINTIFF'S CORE

20     ALLEGATION IS THAT SHE DID NOT CONSENT TO THE PROCEDURE

21     AT ALL.

22             THE COURT: DIDN'T KNOW ABOUT IT, HUH?

23             MS. WOOD: CORRECT, AS ALLEGED. WE CERTAINLY

24     TAKE --

25             THE COURT: WHAT ABOUT WHAT COUNSEL SAYS?

26     COUNSEL, IT'S AN INTERESTING CASE, YOU KNOW. I THINK

27     THESE CASES ARE REALLY INTERESTING. BUT HE SAID THAT HE

28     CAN ALLEGE IN GOOD FAITH THAT THE PROTOCOLS WEREN'T

```
1    FOLLOWED AND THE MANUFACTURER AND THE DESIGN WHICH HAD

2    BEEN PRE-APPROVED WASN'T FOLLOWED, AND THAT HE CAN THEN

3    ALLEGE THAT THERE HAD BEEN A DEFECT OR ALTERATION, AND

4    HE CAN ALLEGE CAUSATION.

5              SO WE'RE NOT JUST TALKING ABOUT DEMURRER.  SO

6    WHY SHOULD I NOT SAY OVERRULED AND LEAVE TO AMEND ON

7    THESE?  YOU KNOW, THE BREACH OF WARRANTY, I DON'T SEE

8    THAT.  I DON'T SEE --

9              MS. WOOD:  AGREED, YOUR HONOR.

10             THE COURT:  PARDON ME?

11             MS. WOOD:  AGREED.

12             THE COURT:  SO TRAINING, I JUST DON'T KNOW WHAT

13   TO DO WITH TRAINING, BUT WE DO HAVE THE COLEMAN, YOU

14   KNOW, THE NEGLIGENT FAILURE TO WARN ON ADVERSE WARNINGS.

15   SO I'VE GOT TO OVERRULE ON THAT, IF HE CAN SHOW A

16   CAUSATION.

17             MS. WOOD:  WELL, RIGHT NOW WE'RE AT THE

18   PLEADING STAGE.

19             THE COURT:  RIGHT.

20             MS. WOOD:  WE ARE, YOUR HONOR.  HE'S HAD, OF

21   COURSE, TWO OPPORTUNITIES, SO MAYBE HE SHOULD GO THROUGH

22   THE BACKGROUND OF THAT A LITTLE BIT.  YOU KNOW, THIS IS

23   A CASE IN WHICH COLEMAN AND STENGEL HAD ALREADY BEEN IN

24   EXISTENCE WHEN THE INITIAL COMPLAINT WAS FILED.  SO IT

25   WAS QUITE CLEAR FROM THE BEGINNING OF THIS CASE WHAT

26   NEEDED TO BE ALLEGED.  SO IT'S NOT JUST THAT THERE'S

27   SOME KIND OF A DEVIATION FROM FEDERAL REQUIREMENTS.

28             IT'S THAT THERE WAS A DEVIATION THAT ACTUALLY
```

1    HAPPENED WITH RESPECT TO PLAINTIFF'S OWN SITUATION, AND

2    THERE'S A CAUSAL LINK TO PLAINTIFF'S OWN INJURY, AND

3    THOSE ARE THE TWO PIECES THAT ARE NOT ADEQUATELY ALLEGED

4    HERE.  SO WE FILED AN INITIAL DEMURRER AND WE POINTED

5    OUT THIS PROBLEM.

6              PLAINTIFF WANTED AN OPPORTUNITY TO AMEND A

7    COUPLE OF DAYS BEFORE THE LAST DEMURRER HEARING, SO THAT

8    HAPPENED.  WE DID A MEET AND CONFER LETTER AND WE SAID

9    THESE OTHER COURTS IN CALIFORNIA, THE DE LA PAZ COURT,

10   THE MCDONELL'S COURT, HAVE GRANTED BAYER'S PREEMPTION

11   MOTION ON ALMOST IDENTICAL ALLEGATIONS.

12             THE COURT:  AND IT'S ALWAYS VERY EGO-INFLATING

13   TO SEE COUNSEL CITE OTHER SUPERIOR COURT RULINGS AS

14   PRECEDENT.  YOU KNOW, IT MAKES ME FEEL LIKE A REAL

15   JUDGE, YOU KNOW, LIKE IN FEDERAL COURT.  BUT, YEAH, IT'S

16   INTERESTING, AND I READ THAT, BUT I HAVE TO BE WORRIED

17   ABOUT THE FACTS OF THIS CASE.

18             MS. WOOD:  CERTAINLY.  AND I THINK THE UNIQUE

19   FACTS OF THIS CASE MAKE IT ALL THE MORE DIFFICULT FOR

20   PLAINTIFF TO PLEAD THE COLEMAN CAUSATION.

21             THE COURT:  IN SOME RESPECTS, THAT'S TRUE.

22             MS. WOOD:  AND THE OTHER POINT THAT PLAINTIFF

23   MADE WHICH I'D LIKE TO RESPOND TO, IS THAT THIS IS NOT

24   BAYER, YOU KNOW, GETTING RID OF AN OPPORTUNITY FOR

25   TRIAL.  THIS IS, OF COURSE, CONGRESS'S REGIME.  CONGRESS

26   HAS DECIDED THAT THERE'S THIS ONE PERCENT OF THE MOST

27   HEAVILY REGULATED MEDICAL DEVICES.  THESE ARE INNOVATIVE

28   DEVICES THAT BRING GREAT BENEFIT TO WOMEN AND THEIR

1    FAMILY, THAT HAVE GREAT POTENTIAL BENEFITS BUT ALSO SOME

2    POTENTIAL RISKS, AND THAT SYSTEM DOESN'T WORK AS IT

3    SHOULD HAVE.

4          FDA HAS BEEN CONTINUALLY CAREFULLY REGULATING

5    THIS PRODUCT FOR MANY YEARS.  IT HAD A HEARING LAST

6    FALL, AS THEY POINT OUT IN THEIR PAPERS.  FDA LOOKED AT

7    ALL OF THESE ISSUES.  THEY POINT OUT IN THEIR PAPERS

8    THAT IN 2011, ALLEGEDLY, THERE WERE THESE PROBLEMS, YOU

9    KNOW, WITH CERTAIN PERFORATION, AERS NOT BEING

10   SUBMITTED.  THOSE HAVE BEEN IN FRONT OF THE AGENCY FOR

11   FIVE YEARS, AND WE LEARNED AT THE END OF FEBRUARY THE

12   AGENCY CONTINUES, IN ITS EXPERT JUDGMENT, TO DETERMINE

13   THAT THIS REMAINS AN IMPORTANT PRODUCT FOR THE

14   MAJORITY --

15          THE COURT:  AND I KNOW THE -- IT'S THE SAME

16   KIND OF POLICY BEHIND ERISA.  YOU KNOW --

17          MS. WOOD:  PRECISELY, YOUR HONOR.

18          THE COURT:  -- ERISA REALLY CUT IN INTO THE

19   CONSUMER'S ABILITY TO SUE FOR LIFE, WEALTH, AND

20   DISABILITY, BAD FAITH INSURANCE, YEAH, BUT THERE WAS AN

21   OVERRIDING POLICY THAT YOU WANTED TO HAVE A LOW-COST

22   COVERAGE FOR THE MAXIMUM AMOUNT OF PEOPLE.  I KNOW THIS.

23          MS. WOOD:  YES, YOUR HONOR.

24          THE COURT:  I'M AWARE OF THAT SOMETIMES THE

25   EVEN LIBERAL CONGRESSES WILL SAY "HEY, YOU KNOW, WE'LL

26   CUT BACK ON CONSUMER PROTECTION FOR THE GREATER GOOD."

27          MS. WOOD:  I'M SORRY, YOUR HONOR.  IF I MIGHT

28   JUST ADDRESS THAT.

1          THE COURT:  WHAT DO YOU THINK OF ALL OF THAT?

2          MS. WOOD:  I THINK IT'S A VERY SIMILAR ANALYSIS

3     TO THE DESIGN ANALYSIS.  HERE, IF YOU LOOK AT THE

4     FDA-APPROVED PHYSICIAN LABELING, IT SAYS THAT THE

5     PHYSICIAN HAS TO ARRIVE WITH BEING AN EXPERIENCED

6     HYSTEROSCOPIST.  AND SO THAT'S IN THE FDA-MANDATED

7     WARNING, THAT THE PLAINTIFF -- EXCUSE ME -- THE DOCTOR

8     COMES TO THE TABLE BEING EXPERIENCED IN THAT PARTICULAR

9     PROCEDURE, BECAUSE WE DON'T TEACH MEDICAL PROCEDURE,

10    OBVIOUSLY.  THAT'S SOMETHING THE DOCTOR DOES IN HIS ORAL

11    JUDGMENT.

12         AND SO THE ARGUMENT IN THE ALLEGATION IN THE

13    COMPLAINT, THAT WE SOMEHOW HAD A DUTY TO TRAIN IN THAT,

14    IS CLEARLY PREEMPTIVE BECAUSE THE AGENCY ALREADY SAID

15    THIS IS TO BE USED BY DOCTORS WHO ALREADY HAVE THAT

16    EXPERIENCE.

17         THERE IS FEDERALLY MANDATED TRAINING.  THERE'S

18    NO ALLEGATION THAT WE, IN ANY PARTICULAR WAY, FAILED TO

19    DO THAT HERE, OR THAT ANY DEFECT IN TRAINING CAUSED ANY

20    KIND OF A PROBLEM HERE.  THERE ARE MANY WELL-KNOWN, AND

21    DESCRIBED IN THE FDA WARNINGS, POTENTIAL RISK OF THIS

22    PROCEDURE, INCLUDING THAT THE PLACEMENT WON'T BE PROPER,

23    INCLUDING THERE BE COULD BE PERFORATION.  THESE ARE

24    WELL-KNOWN, WELL-IDENTIFIED RISKS OF THIS PARTICULAR

25    PLACEMENT.

26         YOU KNOW, SOMETIMES THESE DEVICES DON'T DEPLOY,

27    SP THERE'S SOMETHING UNUSUAL THAT SUGGEST THAT THERE'S

28    SOME SORT OF A FAILURE TO PLEAD -- OR SORRY -- THERE'S

1    SOME SORT OF A FAILURE TO TRAIN.  THOSE ARE WELL-KNOWN

2    REALITIES OF THIS VERY INNOVATIVE --

3           MR. SHOOP:  COUNSEL, LET ME ASK YOU SOMETHING.

4    YOU KNOW THE PROCEDURAL POLICIES MUCH BETTER THAN I DO

5    ON THESE CASES.  WERE THEY GRANTED LEAVE TO AMEND ON THE

6    NEGLIGENT TRAINING?

7           MS. WOOD:  THEY WERE, AND WE'VE SEEN AN

8    ADDITIONAL COMPLAINT FILED SINCE THAT, AND NOBODY WENT

9    FORWARD AND TRIED TO AMEND THAT.  SO I THINK IT'S A VERY

10   DIFFICULT COMPLAINT.  IT'S A VERY DIFFICULT CAUSE OF

11   ACTION TO PLEAD AROUND PREEMPTION, BECAUSE THE AGENCY

12   HAS ALREADY DETERMINED WHAT THE TRAINING OUGHT TO BE.

13          THE COURT:  IF IT'S LIKE YOUR BASIC WARNING,

14   THE DEED, MANUFACTURING, DESIGN, YOU KNOW, THIS IS ALL

15   SOMETHING THAT THE FDA HAS SET FORTH.  I'M A LITTLE

16   INTRIGUED BY COUNSEL'S -- I CALL IT THE BACKYARD STILL

17   THEORY BUT --

18          MS. WOOD:  MAY I ANSWER THAT, YOUR HONOR?

19          THE COURT:  YEAH.  I MEAN, I GOT THIS PICTURE

20   OF, YOU KNOW, THE THREE WITCHES AND MACBETH STIRRING

21   THIS STUFF AROUND.

22          MS. WOOD:  LET ME TRY TO ANSWER THAT.

23          TO BE CLEAR, SO IN 2013 BAYER BOUGHT CONCEPTUS,

24   WHICH WAS THE COMPANY THAT DEVELOPED THIS PRODUCT

25   INITIALLY AND INITIALLY GOT FDA APPROVAL.  THERE WAS AN

26   ALLEGATION THAT AT SOME POINT IN TIME THERE WAS A

27   FAILURE TO GET A PIECE OF PAPER LICENSED FOR THE ACTUAL

28   FACILITY.  THERE IS NO ALLEGATION THAT ANY PRODUCT

1    ACTUALLY LEFT THAT FACILITY OF ANYTHING OTHER THAN THE

2    APPROPRIATE FDA-APPROVED CONDITION.

3         AND, IN FACT, JUDGE PADOVA, IN THE EASTERN

4    DISTRICT OF PENNSYLVANIA SAID, LOOK, JUST BECAUSE

5    SOMETHING -- THERE'S -- NOT EVEN ASSUMING, AS I MUST ON

6    THE PLEADINGS, THAT THIS WAS AN UNLICENSED FACILITY,

7    THAT TELLS ME NOTHING ABOUT WHAT WAS MADE THERE, WHETHER

8    IT DEVIATED FROM FDA REQUIREMENTS, WHETHER THE SPECIFIC

9    DEVICE THAT THE SPECIFIC PLAINTIFF HAD DEVIATED FROM

10   THOSE REQUIREMENTS, OR EVEN IF THERE WERE A DEVIATION,

11   WHETHER THAT CAUSED ANY INJURIES TO THE PLAINTIFF.

12        SO THERE'S THAT WHOLE MOUSETRAP THAT JUST IS

13   NOT ALLEGED AND IS NOT PART OF A COMPLAINT HERE.

14        THE COURT:  WELL, COUNSEL IS GOING TO SAY, "LET

15   ME WORRY ABOUT THAT LATER."  I MEAN -- AND THEN WE'LL

16   COME BACK AND SAY -- YOU KNOW WHAT YOU CAN ALLEGE AND

17   WHAT YOU CAN PROVE; I DON'T.  BUT COUNSEL IS RIGHT,

18   THAT'S A HIGH MOUNTAIN, AND YOU HAVE TO GO -- THERE'S NO

19   REASON TO BELIEVE THAT THIS DEVICE CAME FROM WHEREVER

20   THAT UNLICENSED LAB WAS OR THAT THERE WAS SOMETHING

21   WRONG WITH IT.

22        MS. WOOD:  THAT WAS MANY, MANY YEARS AGO.

23        THE COURT:  YEAH, YOU WOULD HAVE TO SHOW --

24   WELL, YOU KNOW WHAT YOU'RE GOING TO HAVE TO SHOW.  IT'S

25   GOING TO BE REALLY CHALLENGING.

26        NOW, YOU'RE GOING TO COME BACK AND SAY, "WELL,

27   THAT'S THE PLEADING.  THAT'S MY PROBLEM.  LET ME WORRY

28   ABOUT IT." BUT IF AT THE END OF THE DAY IT'S JUST GOING

1    TO RESULT IN SUMMARY ADJUDICATION AND, YOU KNOW, IF YOU

2    CAN'T SHOW ANY REASONABLE PROBABILITY OR LIKELIHOOD OR

3    POSSIBILITY THAT OUR DEVICE CAME FROM THAT LAB, OR THAT

4    IT WAS DEFECTIVE, OR THAT IT CAUSED ANY INJURY, YOU

5    KNOW, IT'S JUST WE'LL SPEND A LOT OF TIME DOING NOTHING,

6    WHERE THEY'RE GOING TO SAY, "WELL, THAT'S WHY GOD MADE

7    DISCOVERY."

8           MS. WOOD:  IF I CAN JUST ANSWER THAT,

9    YOUR HONOR.  I MEAN, OBVIOUSLY --

10          THE COURT:  THAT'S HIS ARGUMENT.

11          MS. WOOD:  YES, YOUR HONOR.  I MEAN, OBVIOUSLY

12   CONGRESS CREATED THIS VERY UNIQUE PREEMPTION REGIME FOR

13   THESE VERY HEAVILY REGULATED PRODUCTS, SO THAT WE DON'T

14   SPEND A LOT TIME ON DISCOVERY RATHER THAN ON INNOVATION

15   AND PROVEN PRODUCTS AND THAT SORT OF THING.  AND WHAT

16   PLAINTIFF HAS TO DO, AND THEY'VE ALREADY FRIED TWICE,

17   GIVEN ALL THE GUIDANCE FROM STENGEL AND COLEMAN ALREADY

18   BEING OUT THERE, THEY HAVE TO BE ABLE TO ALLEGE FACTS TO

19   EXPLAIN HOW THERE'S CAUSATION HERE.  AND THAT'S A VERY

20   IMPORTANT THING THAT THEY HAVE TO PLEAD IN THESE

21   PREEMPTION CASES BEFORE THEY HAVE A RIGHT TO DISCOVERY

22   TO TRY TO FIND AN ALLEGATION.

23          THE COURT:  YOU CAN'T FIGHT WITH THAT.  I MEAN,

24   IF YOU'RE GOING TO ALLEGE THE FACTS, MORE POWER TO YOU,

25   BUT --

26          MR. SHOOP:  IF THE PRODUCT IS SO FANTASTIC,

27   THEN WHY IS THE FDA DOING ALL THIS REVIEW?  WHY ARE

28   THERE SO MANY WOMEN INJURED BY THIS PRODUCT?  I THINK

```
 1    THIS IS GOING TO BE ONE OF THE SEMINAL WOMEN ISSUES OF

 2    OUR TIME.  AND WHY DID THE FDA SET FORTH THREE

 3    ADMINISTRATIVE ACTIONS ON FEBRUARY 29TH AND THEN ORDER

 4    BAYER TO CONDUCT POST-MARKET SURVEILLANCE STUDIES?  WHY

 5    DID THEY ORDER A BLACK BOX WARNING ON THIS IF IT'S SO

 6    SAFE AND SO GREAT?

 7            THE COURT:  MEANWHILE, GETTING BACK TO OUR

 8    CASE, I'M TRYING TO FIGURE OUT HOW THAT APPLIES TO OUR

 9    CASE.  I MEAN, YOU'RE GOING TO HAVE TO ALLEGE CLEARLY --

10    CLEARLY, THE PLAINTIFF IS OUT OF THE LOOP ON THIS ONE,

11    BECAUSE THIS CAME AS A SURPRISE TO HER, WHICH IS AN

12    INTERESTING QUESTION TO POSE TO THE DOCTOR, BUT THEN I

13    SUPPOSE IT'S GOING TO HAVE TO BE -- WE'LL HAVE TO HEAR

14    FROM A DOCTOR WHO SAID I WOULD NEVER HAVE DONE THIS BUT

15    FOR THE FOLLOWING -- QUESTION, WHY I DID IT IN THE FIRST

16    PLACE, BUT, YOU KNOW, I WOULD NEVER HAVE DONE THIS IF I

17    HAD KNOWN ALL OF THIS.

18            I DON'T KNOW.  CAN YOU ALLEGE THAT?

19            MR. SHOOP:  LET ME JUST SAY, WITH A BIT OF

20    PROCEDURAL HISTORY, THE FIRST AMENDED WAS AN AMENDMENT

21    BY RIGHT.  WE DIDN'T HAVE ANY OF THE COURT'S GUIDANCE.

22    WE JUST FILED A FIRST AMENDED COMPLAINT.  SO THIS IS THE

23    FIRST TIME WE HAVE THE COURT'S GUIDANCE ON THIS.  I

24    WOULD RESPECTFULLY ASK 20 DAYS LEAVE TO AMEND AND COME

25    BACK WITH STRONGER ALLEGATIONS.

26            THE COURT:  OKAY.  ALL RIGHT.  HERE'S THE GAME

27    PLAN:  I'LL -- IT'S HARD TO SAY NO TO THAT, BUT I THINK

28    WE ALL KNOW -- YOU AGREE ON THE BREACH OF WARRANTY?
```

```
1     THERE CAN'T BE A --
2               MR. SHOOP:  I DO, YOUR HONOR.
3               MS. WOOD:  AND DESIGN.
4               MR. SHOOP:  I DO.
5               THE COURT:  AND DESIGN DEFECT?
6               MR. SHOOP:  AND DESIGN, CORRECT.
7               THE COURT:  OKAY.
8               MS. WOOD:  AND I THINK TRAINING NEEDS TO BE --
9               MR. SHOOP:  I'M NOT CONCEDING ON TRAINING.  I
10    GAVE YOU DESIGN.
11              THE COURT:  WHAT GENESIS OF THE DUTY TO TRAIN
12    IF NOT THE FDA?
13              MR. SHOOP:  I'M GIVING THEM WARRANTY AND
14    DESIGN, YOUR HONOR.  LET ME KEEP TRAINING.
15              MS. WOOD:  THERE'S ALSO A PROBLEM UNDER STATE
16    LAW.  I MEAN, THERE'S SIMPLY -- IT DOESN'T GO FORWARD AS
17    A MATTER OF LAW.  I THINK ALL OF THESE CLAIMS -- REALLY,
18    THE DEMURRER SHOULD BE SUSTAINED IN ITS ENTIRETY,
19    BECAUSE COLEMAN IS NOT A SURPRISE, STENGEL IS NOT A
20    SURPRISE.  THAT GUIDANCE HAS BEEN OUT THERE, AND THERE'S
21    NO INDICATION -- NORMALLY WHAT YOU WOULD DO IN YOUR
22    OPPOSITION IS SAY, "WHAT KIND OF FACTS CAN I PLEAD?"
23    AND THERE'S NO INDICATION HE CAN PLEAD ANYTHING
24    CONSISTENT WITH STENGEL.
25              THE COURT:  IT'S VERY INTERESTING, BECAUSE I
26    THINK COLEMAN WAS A VERY REASONABLE OPINION BY A VERY
27    MIDDLE-OF-THE-BELL-CURVE COURT OF APPEAL, AND THE
28    CALIFORNIA LAW HAS BEEN PARALLELING THE FEDERAL LAW OUT
```

```
1    OF THE NINTH CIRCUIT AND THE SUPREME COURT.  NOW, YOU

2    COULD ARGUE THAT THE FEDERAL LAW MAY CHANGE BECAUSE

3    THERE WOULD BE A CHANGE IN PERSONNEL, BUT I HOPE NOT.  I

4    HOPE THAT'S NOT WHY LAW CHANGES.

5           NOT THAT I CARE ONE WAY OR THE OTHER ABOUT

6    PREEMPTION.  IT'S JUST I HOPE LAW DOESN'T CHANGE BECAUSE

7    OF MERELY CHANGE IN PERSONNEL.

8           MS. WOOD:  AS YOUR HONOR KNOWS, THERE'S A

9    SERIOUS QUESTION ABOUT WHETHER STENGEL AND COLEMAN ARE

10   WRONGLY DECIDED.  THE OTHER CIRCUITS HAVE DISAGREED AND

11   SAID THOSE KIND OF CLAIMS ARE FULLY PREEMPTED.

12          THE COURT:  YEAH.

13          MS. WOOD:  SO THERE IS SOME DEVELOPMENT IN THE

14   LAW THERE, AS YOUR HONOR KNOWS.

15          THE COURT:  WE HAVE SOME -- FORTUNATELY, WE

16   HAVE COLEMAN THAT I CAN LATCH ON TO.  BUT OKAY.  HERE'S

17   THE GAME PLAN.

18          MS. WOOD:  BUT NO MANUFACTURING DEFECT.  I

19   MEAN, THERE'S REALLY BEEN NO ALLEGATION OF ANY --

20          THE COURT:  HE SAID THERE IS.  HE SAID THERE'S

21   NO DESIGN DEFECT.  THERE'S A MANUFACTURING DEFECT STILL

22   IN THE BACKYARD OF SOMEBODY'S.

23          MS. WOOD:  THERE'S NO ALLEGATION THAT THAT

24   RESULTED -- I MEAN THIS IS JUST LIKE THE EASTERN

25   DISTRICT OF PENNSYLVANIA CASE, WHERE THE JUDGE SAID,

26   REALLY, THERE IS NO PROPER ALLEGATION OF MANUFACTURING

27   DEFECT, BECAUSE THERE IS NO CONNECTION BETWEEN SOME KIND

28   OF LICENSING ISSUE AND A DEFECT IN YOUR DEVICE, LET
```

1    ALONE A DEFECT THAT CAUSED YOUR INJURY.

2          MR. SHOOP:  WE'RE GOING AMEND THE COMPLAINT,

3    COUNSEL.  WE'RE GOING TO AMEND IN 20 DAYS.  I'M NOT

4    GOING TO INCLUDE ANY ALLEGATION OF DESIGN DEFECT, AND

5    I'M NOT GOING TO INCLUDE ANY ALLEGATION WITH REGARD TO

6    BREACH OF WARRANTY.

7          THE COURT:  OKAY.  SO AS THE BREACH OF

8    WARRANTY, WHICH IS WHAT, THREE?  THE THIRD CAUSE OF

9    ACTION?

10          MS. WOOD:  YES.

11          THE COURT:  OKAY.  SUSTAINED WITHOUT LEAVE.

12    THEN WE HAVE TO, LIKE, WEED THE GARDEN.

13          AS TO THE NEGLIGENCE CAUSE OF ACTION -- OKAY.

14    AS TO THE STRICT LIABILITY CAUSE OF ACTION, IS THAT ONE?

15          MS. WOOD:  THOSE WERE OUT, BUT YES.

16          THE COURT:  WE DO HAVE -- THE SURVIVING ONE

17    WILL BE THE FAILURE TO WARN BASED ON FAILURE TO REPORT

18    ADVERSE EVENTS TO THE FDA.  THAT'S IN.

19          MS. WOOD:  PROVIDED THEY CAN PLEAD CAUSATION.

20          THE COURT:  BUT THAT'S IN FOR OUR PURPOSES.

21    THE OTHER PART OF THAT, THE FAILURE TO WARN, FAILURE TO

22    TRAIN, AND DEFECTIVE DEVICE ARE OUT.  SO WE DON'T

23    DISPOSE OF A CAUSE OF ACTION THERE.  WHAT WE DO DISPOSE

24    OF IS PART OF THE DISCLOSE OF THEORY.  SO FAILURE TO

25    TRAIN, FAILURE TO WARN, AND DEFECTIVE DESIGN ARE GONE.

26          IN IS, FAILURE TO WARN BASED ON ADVERSE EVENTS

27    TO THE FDA; THAT IS IN.  SO I GUESS I HAVE TO SAY THAT

28    CAUSE OF ACTION IS OVERRULED.

1    MS. WOOD: YOUR HONOR, MAY I MAKE JUST ONE LAST

2    POINT ON THAT ONE --

3    THE COURT: OKAY.

4    MS. WOOD: -- JUST TO MAKE SURE YOUR HONOR HAS

5    CONSIDERED IT.

6    SO ONLY FAILURE TO WARN AER, THIS CASE IS QUITE

7    DIFFERENT FROM STENGEL OR COLEMAN, IN A NUMBER OF WAYS,

8    BUT IN ONE VERY IMPORTANT WAY: THE AERS THAT PLAINTIFFS

9    SAY WE DID NOT SUBMIT IN A TIMELY MANNER TO THE AGENCY

10   ALL DEAL WITH PERFORATION AND MIGRATION ISSUES. IF YOU

11   LOOK AT THE COLEMAN CASE, YOU LOOK AT THE STENGEL CASE,

12   WHAT WAS AT ISSUE THERE WERE A NEW RISK THAT WAS NOT

13   KNOWN ABOUT IN THE WARNINGS.

14   FROM THE VERY BEGINNING, FROM 2002 UNTIL TODAY,

15   THE RISK OF PERFORATION HAS BEEN PART OF THE

16   FDA-APPROVED WARNINGS. AND SO THEIR ALLEGATIONS ARE, AT

17   BEST, THAT SOME ADDITIONAL AERS WITH RESPECT TO THE SAME

18   ISSUE, NOT A DIFFERENT ISSUE, WHICH THE PHYSICIANS WERE

19   NOT AWARE OF, WHICH WAS REALLY THE CRUX IN STENGEL,

20   THEIR ALLEGATION IS THERE WAS A DELAY IN REPORTING

21   THOSE.

22   NOW, THE AGENCY HAS LOOKED AT ALL OF THAT.

23   THEY'VE HAD A HEARING, AND AT THE END OF FEBRUARY THEY

24   SAID THERE'S REALLY NO DIFFERENCE IN RISK. YES, WE'RE

25   GOING TO CONSIDER A BLACK BOX WARNING, WHICH WE'RE STILL

26   STUDYING, WITH RESPECT TO A VERY DIFFERENT ISSUE OF

27   CONSENT, BUT AS TO PERFORATION THEY HAVEN'T MADE A

28   CHANGE, SUBSTANTIVELY. SO WE JUST THINK THERE'S A REAL

1    DIFFERENCE THERE BETWEEN THE ISSUE IN STENGEL AND

2    COLEMAN, WHICH WAS, IS THERE A NEW RISK THAT'S NOT

3    ALREADY PASSED ON BY THE AGENCY.

4           AND IN THAT CASE, REMEMBER, IN STENGEL THE

5    AGENCY SAID, I'M ISSUING A WARNING LETTER BECAUSE THIS

6    INFORMATION SHOULD HAVE BEEN OUT AND IT WASN'T.  THAT'S

7    NOT OUR CASE HERE AT ALL.  THE AGENCY HAS LOOKED AT ALL

8    OF THESE ISSUES AND THERE'S NO INDICATION THEY'RE

9    CHANGING THE WARNING ABOUT PERFORATION.  SO WE DON'T

10   REALLY THINK IT'S IN THE SAME NEIGHBORHOOD AS STENGEL.

11          SO, YOU KNOW, PLEADING SIMPLY THERE'S SOMETHING

12   WITH RESPECT TO PERFORATION WHERE WHAT'S AT ISSUE IN

13   THIS CASE IS NOT PERFORATION.  SHE'S ALLEGING A

14   DIFFERENT SIDE EFFECT, NAMELY PAIN, SO IT'S VERY

15   ATTENUATING FROM HER CASE.  THERE'S NO ALLEGATION THE

16   AGENCY HAS MADE A CHANGE IN LIGHT OF THAT INFORMATION.

17   SO IT JUST DOESN'T HAVE THE SAME CONCEPTUAL CONNECTION

18   TO THEIR CAUSE OF ACTION.

19          THE COURT:  NOT REALLY.  YOU KNOW, COLEMAN IS

20   MY CASE, SO I REALLY HAVE TO BE CAREFUL WHAT I SAY ABOUT

21   IT.

22          MS. WOOD:  OF COURSE, YOUR HONOR.

23          THE COURT:  BUT I THINK BOTH OF THE DEFENSE AND

24   THE PLAINTIFFS IN THOSE CASES ARE SAYING THAT IT WASN'T

25   A NOVEL THING, THAT THE -- IN THAT CASE THE PHYSICIANS

26   KNEW.  THEY HAVE DIFFERENT CAUSATION ISSUES.

27          MS. WOOD:  I MEAN, I CERTAINLY THINK --

28          THE COURT:  THEY'RE DIFFERENT CAUSATION ISSUES,

1    BUT I THINK THEIR POINT IS, IS THAT PEOPLE KNEW ABOUT

2    THIS AND DIDN'T PASS IT ON.  SO --

3              MS. WOOD:  AND HERE --

4              THE COURT:  DOCTORS KNEW ABOUT IT AND DIDN'T.

5              MS. WOOD:  HERE WE KNOW THE AGENCY HAS PASSED

6    ON, IT HAS NOT CHOSEN TO CHANGE THOSE PARTICULAR

7    WARNINGS, AND AT THE END OF THE DAY THERE IS STILL THE

8    ELEPHANT IN THE ROOM IN THIS CASE, WHICH IS NO AMOUNT OF

9    DIFFERENT INFORMATION WOULD HAVE AFFECTED THIS

10   PLAINTIFF'S DECISION BECAUSE HER CORE ALLEGATION IS SHE

11   DIDN'T MAKE A DECISION.

12             THE COURT:  WELL -- BUT WHAT IF THEY COME BACK

13   AND DEPOSE THE DOCTOR AND THE DOCTOR SAYS, "I RELIED ON

14   X, Y AND Z, AND I WOULD HAVE NEVER DONE THIS.  I

15   UNDERSTAND IT WAS ULTRA VIRUS, BUT I ONLY DO ULTRA VIRUS

16   THINGS WHEN I'M CONVINCED, BASED UPON ALL I READ, IS

17   THAT IT'S PERFECTLY SAFE AND IT'S IN THE PATIENT'S BEST

18   INTEREST.  AND NOW I'M HORRIFIED, HORRIFIED TO LEARN ALL

19   THESE NEW THINGS, AND I NEVER WOULD HAVE DONE THIS."

20             MS. WOOD:  THERE'S NOTHING --

21             THE COURT:  WHAT ABOUT THAT?

22             MS. WOOD:  OUR POINT IS SIMPLY, PROCEDURALLY,

23   THEY HAVE TO PLEAD THAT.  THEY CAN'T WAIT UNTIL LATER.

24   RIGHT NOW WE'RE AT THE ALLEGATION STAGE.

25             THE COURT:  I AGREE WITH THAT.

26             MS. WOOD:  THEY HAVE TO PLEAD THERE WAS

27   SOMETHING THAT ACTUALLY CAUSED THE INJURY HERE, AND THEY

28   HAVEN'T DONE THAT.  THEY'VE HAD TWO TRIES.  THEY KNEW

1    ABOUT COLEMAN AND STENGEL AT THE OUTSET. AND THE OTHER

2    THING IS, THERE'S NOTHING NEW HERE. PERFORATION IS NOT

3    A NEW RISK. THERE'S NOTHING NEW IN THE RISK PROFILE OF

4    THIS PARTICULAR PRODUCT, AND THE AGENCY HAS NOT TAKEN

5    DIFFERENT ACTION --

6            THE COURT: OKAY. NOW YOU'RE WAY BEYOND.

7    YOU'RE TALKING ABOUT THINGS THAT ARE FACTUAL AND THAT

8    ARE WAY, WAY BEYOND -- THAT'S FOR WELL DOWN THE ROAD.

9    AND YOU COULD BE RIGHT. I MEAN, I JUST DON'T KNOW. BUT

10   COUNSEL IS RIGHT. I THINK YOU'RE PRETTY MUCH LIMITED TO

11   THE DOCTOR SAYING HE WAS SHOCKED, OR SHE.

12           IS IT A HE OR SHE?

13           MS. WOOD: SHE.

14           THE COURT: WAS SHOCKED AND DISMAYED TO FIND

15   ALL THESE -- LEARNING FOR THE FIRST TIME ALL THESE

16   THINGS ABOUT THIS DEVICE.

17           MS. WOOD: WHICH HAVE BEEN --

18           THE COURT: "I'D RUN AWAY IN A FOUR-MINUTE MILE

19   HAD I KNOWN," YOU KNOW.

20           MS. WOOD: WHICH HAVE BEEN IN THE LABEL SINCE

21   2002.

22           THE COURT: OKAY.

23           MS. WOOD: BUT, YES, YOUR HONOR.

24           THE COURT: OKAY. LOOK, THE NEGLIGENCE CAUSE

25   OF ACTION, IS THAT DIFFERENT THAN THIS STRICT LIABILITY?

26   OR IS THAT JUST A THE WARNING TO THE FDA?

27           MR. SHOOP: THAT'S THE WARNING TO THE FDA. THE

28   NEGLIGENCE CAUSE OF ACTION STAYS IN.

1          THE COURT:  OKAY.

2          MS. WOOD:  ANY OTHER ASPECTS ARE OUT.

3          THE COURT:  YEAH.  SO THE NEGLIGENCE ONE IS

4    OVER, BUT I THINK WE KNOW WHERE WE ARE.

5          THE CLERK:  WHAT CAUSE OF ACTION IS THAT?

6          THE COURT:  THAT'S TWO, ISN'T IT?

7          MR. SHOOP:  TWO IS NEGLIGENCE.

8          MS. WOOD:  THE PROBLEM IS THEY PACK DIFFERENT

9    THEORIES UNDER NEGLIGENCE WITHOUT PULLING THEM OUT,

10   YOUR HONOR.

11         THE COURT:  BUT, YOU KNOW, WE ALL KNOW WHERE

12   WE'RE TALKING ABOUT.  AND AS FAR AS THE TRAINING, THAT

13   WASN'T A SEPARATE THEORY, WAS IT -- A SEPARATE CAUSE OF

14   ACTION, WAS IT?

15         MS. WOOD:  NO.

16         THE COURT:  SO TRAINING IS OUT.  I WILL SUSTAIN

17   THE TRAINING WITHOUT LEAVE.  SO NOW THAT WE KNOW EXACTLY

18   WHERE WE STAND --

19         THE CLERK:  SO --

20         THE COURT:  SO I THINK ONE AND TWO ARE IN;

21   THREE IS OUT.  THREE IS OUT, WITHOUT LEAVE.

22         THE CLERK:  BUT ONE AND TWO ONLY AS TO THE

23   STENGEL AER, IF THEY CAN ADEQUATELY PLEAD CAUSATION?

24         THE COURT:  YEAH.  THEY GOT THEIR COLEMAN

25   HAIRCUT FROM ONE AND TWO.

26         I HAVEN'T HEARD FROM THE DOCTOR.  WE'RE DYING

27   TO HEAR FROM THE DOCTOR AS TO WHAT WAS SHE THINKING?

28         MS. COSTA:  WHAT WAS SHE THINKING?

1       THE COURT:  YEAH.  SHE'S GETTING KICKED AROUND

2   HERE OFF THE ULTRA VIRUS ACT OF DECIDING TO IMPLANT

3   SOMETHING WITHOUT TELLING THE PATIENT.

4       MS. COSTA:  WELL, WE'RE SAYING THAT SHE GAVE

5   THE PLAINTIFF ALL OF THAT INFORMATION.

6       THE COURT:  OKAY.  GOOD TO SEE YOU GUYS.

7   INTERESTING CASE.  I LOVE THIS.

8       CAN I HELP YOU WITH SOMETHING ELSE?

9       MR. SHOOP:  NO, THANK YOU, YOUR HONOR.

10      THE COURT:  CAN I HELP YOU GUYS?

11      MS. DEGEN:  NOT TODAY, YOUR HONOR.  THANK YOU

12  VERY MUCH.

13      THE COURT:  YOU GUYS HAVE A MEDIATION SET UP?

14  NOT THAT I WANT YOU TO SETTLE THE CASE, BUT DO YOU HAVE

15  A MEDIATION SET UP?

16      MS. DEGEN:  WE DO NOT HAVE ONE SET UP,

17  YOUR HONOR.  I THINK ALL PARTIES FELT WE NEEDED TO GET

18  THROUGH THE DEMURRER, AND THERE HAS STILL BEEN SOME

19  QUESTION AS TO WHETHER -- ARE WE STAYING, OR ARE WE

20  GOING TO FEDERAL COURT.

21      MS. COSTA:  THERE IS A FTCA APPLICATION

22  PENDING, WHICH WE SHOULD HEAR BACK BY THE END OF NEXT

23  WEEK AT THE LATEST.  I'VE BEEN FOLLOWING UP, BUT THEY'RE

24  REALLY BEHIND OVER AT THE DHHS.

25      THE COURT:  YOU WANT TO GO BACK TO FEDERAL

26  COURT, THEN?

27      MS. COSTA:  YES.  WE HAVE A FTCA APPLICATION

28  PENDING BECAUSE OUR DOCTOR IS EMPLOYED BY A CLINIC.

1    FEDERALLY FUNDED CLINIC.

2            THE COURT:  I WAS GOING TO SAY, THESE ARE ALL

3    PENDING STATE CLAIMS.  HOW ARE YOU GOING TO FEDERAL?  I

4    DIDN'T REALIZE IT'S AN EMPLOYMENT ISSUE.  I SEE.

5    INTERESTING.  INTERESTING.  I HOPE YOU STAY.

6            OKAY.  GOOD TO SEE YOU GUYS.

7            MR. SHOOP:  THANK YOU, YOUR HONOR.

8            MS. WOOD:  THANK YOU, YOUR HONOR.

9            THE COURT:  NOTICE WAIVED?

10           THE CLERK:  SO ONE AND TWO ARE OVERRULED?

11           THE COURT:  AND THREE SUSTAINED WITHOUT LEAVE.

12           OKAY.  THANKS.

13           (PROCEEDINGS WERE ADJOURNED AT 10:11 A.M.)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              FOR THE COUNTY OF LOS ANGELES

3    DEPARTMENT CCH 14              HON. TERRY A. GREEN, JUDGE

4

   MAYRA NORIS,                    )
5                                  )
               PLAINTIFF,          )
6                                  )
        V.                         )  CASE NO. BC589882
7                                  )  REPORTER'S
                                   )  CERTIFICATE
8    BAYER ESSURE, INC., ET AL.,   )
                                   )
9            DEFENDANTS.           )
   _____)

10

11

12        I, MARCO NEILLY, PRO TEMPORE REPORTER OF THE

13   SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE

14   COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

15   FOREGOING PAGES, 1 THROUGH 27, INCLUSIVE, COMPRISE A

16   FULL, TRUE AND CORRECT TRANSCRIPT OF THE TESTIMONY AND

17   PROCEEDINGS TAKEN IN THE ABOVE-ENTITLED MATTER ON APRIL

18   26, 2016.

19        DATED THIS 28TH DAY OF APRIL, 2016.

20

21        _____
          MARCO NEILLY, CSR NO. 13564
22

23

24

25

26

27

28