UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| SARANDA WOLFORD and SHEILA TAYLOR,<br><br>Plaintiffs,<br><br>V.<br><br>BAYER CORPORATION, et al.,<br><br>Defendants. | CIVIL NO. 7:16-227-KKC-HAI<br><br><br>**OPINION & ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a motion to remand to Pike County Circuit Court filed by plaintiffs (DE 22). The plaintiffs have also requested a hearing with this Court in connection with their motion to remand (DE 31). For the following reasons, plaintiffs' motion to remand (DE 22) is **GRANTED** and plaintiffs' motion for hearing (DE 31) is **DENIED**.

## I. Background

Four plaintiffs originally filed this civil suit in Pike Circuit Court on September 22, 2016 (DE 1-1, at 7). Of the four original plaintiffs, only two remain: Saranda Wolford and Sheila Taylor. *See* (DE 28,41). The plaintiffs have joined five defendants: Bayer Corporation, Bayer Healthcare LLC, Bayer Essure, Inc., (f/k/a Conceptus, Inc.), and Bayer Healthcare Pharmaceuticals, Inc. (collectively herein called the "Bayer defendants"), and Pikeville Medical Center ("PMC"). The defendants filed a notice of removal to this Court on October 17, 2016 (DE 1). In that notice, the defendants argue that this Court has both federal question and diversity jurisdiction (DE 1, at 2-3). On November 1, 2016, plaintiffs filed a

1

motion to remand (DE 22), challenging this Court's jurisdiction. The issues have been sufficiently briefed by both parties and a hearing is not necessary.

This case involves the plaintiffs' use of a permanent birth control device called "Essure." Plaintiff Wolford and Taylor both underwent surgery at PMC to have the Essure device implanted, Wolford in 2014 and Taylor in 2013. Both plaintiffs allege that PMC failed to properly inform them of the risks associated with the device, and failed to use reasonable care in implanting the device (DE 1-1). Both plaintiffs allege that they suffered damages following their Essure implantation, including device migration, pain, and subsequent surgeries (DE 1-1). In September of 2014, Plaintiff Taylor learned that she was pregnant and underwent a cesarean section in May of 2015. (DE 1-1, 93).

The plaintiffs contend that the device was originally created by Conceptus, Inc., a company bought by Bayer in 2013 (DE 22-1, at 5). In 2002, Essure was granted pre-market approval as a Class III medical device by the Food and Drug Administration, pursuant to the Medical Device Amendments to the Federal Food, Drug, and Cosmetic Act (DE 8-6, at 2). The plaintiffs do not attack the pre-market approval process. Instead, the plaintiffs allege the Bayer defendants failed to conform to FDA requirements regarding post-market monitoring of the device (DE 22-1, at 9). As a specific example of this conduct, plaintiffs allege that Conceptus, subsequently purchased by Bayer, failed to report to the FDA adverse effects that were discovered once Essure became widely used in the market, despite having an affirmative duty to do so (DE 22-1, at 9). Plaintiffs allege that these actions constitute a violation of various state tort laws and that, without the violations, the plaintiffs would never have used the device (DE 1-1).

##        II.      Analysis

Although several motions are pending in this matter, the Court must first determine whether removal from Pike County Circuit Court was proper. Under 28 U.S.C. § 1441(a), the defendants may remove this case to federal court if they could have originally brought it here. On a motion to remand, the burden rests with the defendant to prove that this Court has original jurisdiction. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). Original jurisdiction exists through either diversity of citizenship, *see* 28 U.S.C. §§ 1332(a) and 1441(b), or federal question jurisdiction, *see* 28 U.S.C. §§ 1331 and 1441(a). When doubts as to the appropriateness of removal exist, "the removal statute should be strictly construed and all doubts resolved in favor of remand." *Eastman*, 438 F.3d at 550. The Court considers the parties' arguments on jurisdiction below.

**A. Federal Question Jurisdiction**

Courts have consistently applied the "well-pleaded complaint" rule when reviewing federal question jurisdiction on a motion to remand. "To determine whether the claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and ignore potential defenses[.]" *Mikuslki v. Centerior Energy Corp.*, 501 F.3d 555, 560 (2007) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)). As a result of the rule, "federal questions presented by defenses—or even by the plaintiff's anticipatory rebuttal of an expected defense—cannot support jurisdiction." *Dillon v. Medtronic, Inc.*, 992 F.Supp.2d 751, 755 (2014) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983)). "So, with only rare exception, a dispute over whether federal law trumps the plaintiff's state cause of action does not satisfy § 1331, since preemption is usually raised as a defense." Id. (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). "'[R]emoval and

preemption are two distinct concepts,' and the fact that plaintiffs' claim might ultimately prove to be preempted does not establish that it is removable to federal court." *Strong v. Telectronics Pacing Systems, Inc.*, 78 F.3d 256, 261 (6th Cir. 1996) (quoting *Warner v. Ford Motor Co.*, 46 F.3d 531 (6th Cir. 1995).

In this case, plaintiffs do not rely on a federal cause of action within their complaint. Instead, plaintiffs assert various state-law tort claims against the defendants. *See* (DE 1-1, Pl. Complaint); *see also* (DE 22-1, Pl. Mem. in Support of Mtn. to Remand, at 15-16). As such, the claims within the well-pleaded complaint do not directly arise under federal law or jurisdiction. The United States Court of Appeals for the Sixth Circuit, however, acknowledges three exceptions to the well-pleaded complaint rule, by which the defendants could still show that federal jurisdiction is proper. *See Mikulski*, 501 F.3d at 560. The first two exceptions, artful-pleading and complete preemption, are inapplicable in this case. Only the third exception, the substantial federal question doctrine, is at issue.

### i. The doctrines of artful pleading and complete preemption

Under the artful pleading doctrine, a plaintiff may not "avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims." *Mikuslki*, 501 F.3d at 560. By its very nature, the artful pleading doctrine requires there first to be a federal cause of action that the plaintiff is trying to avoid—one that might have been invoked absent artful pleading. *See id.* at 561-563. In this case, Congress has provided no private right of action under the FDCA, meaning the plaintiffs never had a federal claim to artfully plead around. 21 U.S.C. § 337(a).

Related to the artful pleading doctrine, removal under complete preemption "is proper 'when a federal statute wholly displaces the state-law cause of action[.]'" *Id.* (citing *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 397 (1981)). Thus far, complete preemption has

4

been limited to three classes of cases by the Supreme Court: Section 301 of the Labor Management Relations Act of 1947; the Employee Retirement Income Security Act of 1975; and the National Bank Act. *Mikulski,* 501 F.3d at 563-564. Further, the Sixth Circuit has specifically declined to extend the doctrine to the Medical Device Amendments of the FDCA. *See Strong,* 78 F.3d at 259. As such, it is not applicable in this case.

### ii. The substantial federal question doctrine

The remaining exception to the well-pleaded complaint rule is the substantial federal question doctrine. While a canvassing of the case law is necessary, the United States Supreme Court distilled the essence of the doctrine in *Grable & Sons Metal Products, Inc., v. Darue Engineering & Manufacturing,* 545 U.S. 308 (2005). In that case, a former landowner brought a quiet title action under state law against a tax sale purchaser, alleging the Internal Revenue Service had given him inadequate notice of sale. *Id.* After removal, the Court found federal jurisdiction existed because the meaning of the federal statute requiring notice was at issue; the Government had a strong interest in prompt and certain collection of delinquent taxes; and there would be a microscopic effect on the federal-state division of labor if federal jurisdiction was exercised. *Grable,* 545 U.S. at 314-315.

Reciting the Supreme Court's decision in *Grable*, the Sixth Circuit has followed a three-part test when deciding if state-law claims implicate federal question jurisdiction:

> (1) The state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities.

*Mikuslki*, 501 F.3d at 568. In another case, *Gunn v. Miton,* 568 U.S. 251, 258 (2013) the Supreme Court provide more guidance as to the substantial federal question doctrine describing the doctrine as applying only to a "special and small category of cases." As to the second element cited above, substantiality, the Supreme Court concluded that "it is not

5

enough that the federal issue be significant to the particular parties," but must be an important issue "to the federal system as a whole." *Gunn,* 568 U.S. at 260.

The Sixth Circuit has also weighed in on the element of substantiality, reciting four considerations:

> (1) Whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e. the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases.

*Mikuslki*, 501 F.3d at 570.

Although prior to both *Grable* and *Gunn*, another Supreme Court case is helpful in our analysis. In *Merrell Dow Pharmaceuticals Inc., v. Thompson,* 478 U.S. 804 (1986), the Court considered common law tort claims against a drug manufacturer that had been removed to federal court. As part of the common law claims, "[plaintiffs] alleged that the drug Bendectin was 'misbranded' in violation of the [FDCA]…because its labeling did not provide adequate warning that its use was potentially dangerous." *Id.* at 805-806. The *Merrell Dow* Court quoted the Sixth Circuit Court of Appeals' language when deciding federal jurisdiction was improper:

> Plaintiffs' causes of action referred to the FDCA merely as one available criterion for determining whether Merrell Dow was negligent. Because the jury could find negligence on the part of Merrell Dow without finding a violation of the FDCA, the plaintiffs' causes of action did not depend necessarily upon a question of federal law.

*Id.* at 807. Further, the *Merrell Dow* Court held that "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution….'" *Id.* at 817 (quoting 28 U.S.C. § 1331). Several years later in *Grable*, however, the Supreme Court cautioned that "*Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to,

6

but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *Grable,* 568 U.S. at 318. *Merrell Dow* may have been limited, but was not overturned.

Finally, the Supreme Court has specifically stated that the MDA only preempts state requirements that are "different from, or in addition to" requirements imposed by federal law, leaving room for independent state causes of action. *Riegel v. Medtronic, Inc.,* 552 U.S. 312, 330 (2008). "Thus, § 360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." *Id.*

### iii. Application in our case

In this case, the plaintiffs have styled each of their claims under state law, rather than federal law. Plaintiffs' styling of the case will likely require a reviewing court to apply and analyze defendants' duties under the MDA, but it is not clear that the analysis will raise questions of federal law that meet the *Grable* test. In particular, the questions raised in this case are not substantial, nor are they the type to cause disruptions in the balance of federal and state judicial responsibility.

#### a. Substantiality

*Grable* requires that state law claims raise a "substantial" issue of federal law, and the Sixth Circuit has recited factors to consider when weighing substantiality. *Mikuslki*, 501 F.3d at 568-570. In this case, those factors cut against application of federal question jurisdiction.

First, this case does not include a federal agency, or call upon this Court to review an agency's compliance with the federal statute in dispute. *Id.* In this case, it is the conduct of private companies, the Bayer defendants, which allegedly violated state tort laws.

7

Second, the federal questions that may be raised in this litigation do not appear to be important in the manner required by Supreme Court precedent. While they will be important to these particular parties, *Gunn* requires the questions raised be important to the federal judicial system as a whole. *Gunn,* 568 U.S. at 263. Here, the defendants state that the "federal issues are hotly contested," but cite the conduct of the parties and the sufficiency of plaintiffs' allegations as contested, rather than any meaningful interpretation of the MDA or federal law. *See e.g.,* (DE 27, 8) (pointing the Court to plaintiffs' failure to rely on statements made by the defendants, and plaintiffs' failure to show that defects in manufacturing and training caused their injuries). There is little evidence that applying the federal requirements in issue, particularly reporting requirements, to the parties' conduct will implicate broader or more substantial federal issues, or control numerous other cases going forward. *See Mikulski,* 501 F.3d at 570-571. Further, it appears that at least some of the reporting obligations may be fairly unique to these defendants. In a premarket approval letter, some of the reporting obligations were described as "[i]n addition to the post approval requirements," and "agreed to" by the Bayer defendants and an agency of the FDA. (DE 1-2, Premarket Approval Letter). But regardless, it is unclear that applying routine provisions of the MDA to defendants' conduct, without more, places this case in the "special and small category of cases" that raise issues important to the federal system as a whole. *Gunn,* 568 U.S. at 258-260.

While federal preemption will be raised in this case, that alone does not raise a substantial issue of federal law. "[State] courts are capable of deciding whether the plaintiffs' claims against [the defendant] are preempted," and it is not a basis for conferring federal jurisdiction. *In Re Darvocet, Darvon and Propoxyphene Products Liability Litigation,* 889

8

F.Supp.2d 931, 938 (E.D. Ky 2012); *see also Strong,* 78 F.3d at 261 (quoting *Warner v. Ford Motor Co.,* 46 F.3d 531 (6th Cir. 1995).

Finally, since plaintiffs have brought various state-law tort claims, each with various elements and none of which are compliance with the MDA, it is unclear that the federal issues in this case will be dispositive. Ultimately, it appears that any violation of federal law will only be used as evidence to prove a broader violation of Kentucky state law. That federal issues may be raised among state law claims is not enough to confer jurisdiction, since state courts are presumptively competent to apply federal law. *See Mikulski,* 501 F.3d at 560.

### b. Federal/State balance

The final element of *Grable* also fails here. Canvassing of the case law shows that this is the type of case that may disturb the congressionally approved balance of federal and state judicial responsibilities. While *Merrell Dow* has been narrowed, the opinion still compels us to consider whether Congress created a federal private right of action under the statute in dispute, and whether Congress would have meant to welcome the particular state-law tort case into federal court. *See Grable,* 545 U.S. at 318-319. In this case, Congress has neither provided a private right of action, "nor completely precluded state jurisdiction over claims alleging violations of the MDA." *Schilmiller,* 44 F.Supp.3d at 731. Further, the Supreme Court has made it clear that states have the power to provide damage actions premised on violations of the FDCA, and that such actions merely parallel federal law. *Riegel,* 552 U.S. at 330. Given such, this Court once again joins the many district courts finding that the types of claims raised here do not pass the *Grable* test, and do not confer federal question jurisdiction. *See Johnson v. Bayer Corp.,* No. 4:16-CV-729 (CEJ), 2016 WL 3015187 (E.D. Mo. 2016); *Dorman v. Bayer Corp.,* No. 4:16-CV-601 (HEA), 2016 WL 7033765 (E.D. Mo. 2016); *Dillon v. Medtronic, Inc.*, 992 F.Supp.2d 751 (E.D. Ky. 2014); *Schilmiller v.*

*Medtronic, Inc.,* 44 F.Supp.3d 721 (W.D. Ky. 2014); *McCann v. West Chester Hospital, LLC,* 233 F.Supp.3d 607 (S.D. Ohio 2017); *Lee v. Kirkpatrick,* No. 1:16-CV-123 (GNS), 2016 WL 7197478 (W.D. Ky. 2016).

**B. Diversity Jurisdiction**

In opposition to the plaintiffs' motion to remand, the defendants allege that this Court has diversity jurisdiction. (DE 27 at 12-21). Since two of the original plaintiffs are no longer parties to this suit—Ms. Atkinson and Ms. Johnson—the Court finds that the defendants' arguments related to severing the claims of those two former parties have become moot. Further, arguments that plaintiff Wolford's claims should be transferred to the eastern district of Missouri under the first to file rule are unavailing, as Wolford has previously and voluntarily dismissed any claims without prejudice in that venue. (DE 30-23, at 2-3). Thus, the only issues remaining for this Court are defendants' arguments that PMC has been fraudulently joined. Specifically, defendants allege that all claims against PMC by plaintiffs Wolford and Taylor are foreclosed by the Kentucky statute of limitations, and PMC's joinder is an attempt to improperly destroy diversity jurisdiction.

At the outset, it should be noted that, while some circuits have allowed defendants to establish fraudulent joinder by raising the affirmative defense of an expired statute of limitations, the Sixth Circuit has yet to rule on the issue. *See Williams v. Altman,* 2013 U.S. Dist. LEXIS 281 (E.D. Ky. 2013). However, since the defendants have not carried their burden of establishing the affirmative defense, this Court need not resolve the issue of whether it is even proper to consider an affirmative defense when reviewing a motion to remand based upon fraudulent joinder. *See e.g., Williams,* 2013 U.S. Dist. LEXIS 281, at *13 n.2.

### i. Legal standards

Fraudulent joinder of a local party "will not defeat removal on diversity grounds." *Saginaw Housing Com'n v. Bannum, Inc.,* 576 F.3d 620, 624 (6th Cir. 2009) (quoting *Coyne v. Am. Tobacco Co.,* 183 F.3d 488, 493 (6th Cir. 1999)). Joinder of a party is fraudulent "when the non-removing party joins a party against whom there is no colorable cause of action." *Id.* The burden of proof rests with the removing party, and requires showing that the non-removing party could not have established a cause of action under state law against the non-diverse party that was joined. *Coyne,* 183 F.3d at 493. In reviewing such a claim, this Court must resolve "all disputed questions of fact and ambiguities in the controlling state law in favor of the non-removing party [and] [a]ll doubts as to the propriety of removal are resolved in favor of remand." *Id.* (quoting *Alexander v. Electronic Data Sys. Corp.,* 13 F.3d 940, 949 (6th Cir. 1994)). A district court is generally limited to piercing the pleadings in search of *undisputed* facts that negate the underlying claim and, even within this context of limited piercing, must draw any contested issues of fact in the plaintiff's favor. *See Casias v. Walmart Stores, Inc.,* 695 F.3d at 428, 433 (6th Cir. 2012); *see also Walker v. Philip Morris USA, Inc.,* 443 Fed. Appx. 946, 954-956 (6th Cir. 2011).

While the Court is confined to the above mentioned review of defendants' fraudulent joinder claim, the statute of limitations is an affirmative defense that the defendants must prove themselves. *See* Ky. R. Civ. P. 8.03; *Lynn Mining Co. v. Kelly,* 394 S.W.2d 755, 759 (Ky. 1965). Kentucky has a one-year statute of limitations for medical malpractice claims. Ky. Rev. Stat. Ann. § 413.140(1)(e), (2). The claim begins to accrue at the time the injury is first discovered, or when it should have been discovered in the exercise of reasonable care. *Id.* To discover an injury, a plaintiff must know two things: (1) that she has been wronged; and (2) the identity of the person who wronged her. *Wiseman v. Alliant Hosps., Inc.,* 37

S.W.3d 709, 712 (Ky. 2000). The Sixth Circuit has guided our analysis on the knowledge necessary to trigger the Kentucky statute of limitations:

> In constructing knowledge, [] a court must give special consideration to the patient's perspective because '[o]ne who possesses no medical knowledge should not be held responsible for discovering an injury based on the wrongful act of a physician'…In Kentucky, when there is a disputed issue of fact as to when a plaintiff 'discovered or should have discovered' his cause of action, that factual issue should be resolved by the jury in cases in which the plaintiff has asked for a jury….Federal law does not present a conflict with Kentucky law.

*Elam v. Menzies,* 594 F.3d 463, 466-467 (6th Cir. 2010) (quoting *Wiseman,* 37 S.W.3d at 712-713). Since the plaintiffs filed this case on September 22, 2016, the defendants must prove that, prior to September 22, 2015, plaintiffs Wolford and Taylor knew, or should have known, that they were injured by PMC.

In *Williams v. Altman,* 2013 U.S. Dist. LEXIS 281 (E.D. Ky. 2013), this Court ruled on arguments very similar to the ones brought by the defendants in this case. In *Williams*, the Court reiterated that inferences arising from factual disputes about when a plaintiff knew or should have known of an injury under the Kentucky statute of limitations must be drawn in favor of the plaintiff at this stage. *See id.* at *15-17. In reviewing the defendants' arguments that the plaintiff should have known of her medical injury years before she filed her complaint, this Court held that, "[defendants] may ultimately be correct, but that is not for this Court to say at this juncture." *Id.* Instead, the Court reasoned:

> [W]hen [plaintiff's] pain and suffering began is not dispositive. What matters is when she should have realized that she had been wronged. Under Kentucky law that is a question of fact for the jury. And the defendants offer no evidence that would prevent a reasonable jury from accepting [plaintiff's] claim that she had no reason to suspect medical malpractice until her appointment on October 4, 2011…The defendants point to the fact that she experienced pelvic pain before her October 2011 appointment, and that the FDA issued Public Health Notifications. But those facts do not definitively establish that [plaintiff] should have known she was the victim of malpractice. She has no medical expertise. So a jury could find it reasonable for [plaintiff] not to realize that the symptoms she experienced were the result of medical malpractice…Judging this evidence and drawing factual inferences based on the weighing of that evidence is for a jury, not a judge.

12

*Id.* at 15-17 (citations omitted). Similarly in this case, the defendants have pointed only to inferences arising from facts that are disputed by the plaintiffs. As such, the defendants have not carried their burden of proving that the Kentucky statute of limitations prevents the plaintiffs from having a colorable basis of recovery under Kentucky law.

    i. **Application in our case**

        a. **Plaintiff Wolford**

It is undisputed that the Essure device was implanted by PMC in May of 2014, the device was removed by PMC in March of 2015, and plaintiff Wolford filed this lawsuit in Pike Circuit Court on September 22, 2016, which was ultimately removed to this Court. (DE 1-1, at 7). Wolford brings various claims against PMC for their original selling of the Essure device, alleged negligence in placing the device during implantation surgery, and alleged negligence in failing to extract all pieces of the device upon removal. Wolford asserts that she first knew removal of the device had failed when fragments of the device showed up on a transvaginal ultrasound in 2016. (DE 22-1, at 32). Wolford argues that review of her medical records following the ultrasound in 2016 led to her discovery that PMC had been negligent when originally placing the device. (DE 22-1, at 32). In contrast, defendants argue that evidence within Wolford's medical records show that she knew, or should have known, of any injury caused by PMC prior to the removal of the device in 2015. (DE 27, at 12-14). While defendants may ultimately be correct, their arguments rely on inferences from disputed facts in the record and, at this stage in the proceedings, all inferences must be drawn in favor of plaintiffs. *Casias,* 695 F.3d at 433.

While the defendants are correct to point out that Wolford called PMC on September 16, 2014, complaining of pain and being afraid that it "was something to do with her Essure or cyst," those very same notes from the phone call show that Wolford was told by PMC that the location of the pain (above the naval) was inconsistent with gynecological problems. (DE 22-

13

4, at 1019). Defendants' attempts to show that non-gynecological problems were later ruled out by other medical testing (DE 27, at 13-14) is unpersuasive. The medical tests cited by the defendants are records of an emergency department visit in which an ultrasound was taken of Wolford's gallbladder. (DE 22-4, at 1043-1050). While the ultrasound showed no abnormalities of the gallbladder, this is hardly proof that Wolford knew, or should have known, of an injury inflicted by PMC relating to her Essure device. *See e.g., Elam,* 594 F.3d at 466 ("[A] court must give special consideration to the patient's perspective because one who possesses no medical knowledge should not be held responsible for discovering an injury based on the wrongful act of a physician") (internal quotations omitted).

Defendants also point the Court to three Hysterosalpingogram (HSG) tests that specifically reference migration of the Essure device, and the ultimate removal of the device, since those events all occurred prior to September 22, 2015. (DE 27, at 13-14). Plaintiff Wolford counters, however, arguing that she was never informed that her pain was related to the misplacement of the device by PMC, and was only ever told that removal was necessary because "the device had 'failed,'" not because PMC had misplaced the device. (DE 22-1, at 2). Disputed facts therefore exist as to what plaintiff Wolford was told by PMC, and what she should have learned from her medical reports about PMC's role in her injury. In reviewing fraudulent joinder, disputes of fact are to be drawn in favor of the plaintiff and remand. *Coyne,* 183 F.3d at 493.

Finally, defendants reference the early onset of Wolford's pain and suffering, arguing that this gave her "reason to know…that Dr. Hobb's surgery implanting the device had been deficient from the start." (DE 27, at 13-14) (internal quotations omitted). First, such an argument rests on an inferential leap, which must be drawn in favor of Wolford at this stage. Second, "when [Wolford's] pain and suffering began is not dispositive…[w]hat matters is

14

when she should have realized that she had been wronged." *See Williams,* 2013 U.S. Dist. LEXIS 281, 15-17.

The defendants have not proven that the Kentucky statute of limitations prevents Wolford from making out a colorable claim against PMC. Specifically, the defendants have pointed to no facts preventing a reasonable jury from concluding that Wolford did not and should not have known of PMC's role in her injury—their alleged malpractice in placing the device—before September 22, 2015. At best, the defense asks this Court to infer such knowledge from other facts within the record, facts that are disputed by Wolford. While the defendants may ultimately be correct as to knowledge, such disputes are best resolved by juries, not a court reviewing fraudulent joinder. *See Williams,* 2013 U.S. Dist. LEXIS 281, 15-17; *see also Elam,* 594 F.3d at 466-467.

### b. Plaintiff Taylor

#### 1. Continuous course of treatment doctrine

Plaintiff Taylor alleges that PMC implanted the device in 2013, and she thereafter continued to treat with PMC up to and including August 2, 2016, when she underwent surgery for the removal of the Essure device. (DE 22-1). Taylor argues that the continuous course of treatment doctrine tolls the Kentucky statute of limitations during the time she continued to treat with PMC. (DE 22-1, at 33-36). If correct, the statute of limitations would not have begun running until 2016, making her complaint filed on September 22, 2016, timely. The doctrine's effect on the statute of limitations for medical malpractice has been explained by the Kentucky Supreme Court:

> [W]here a patient, in good faith, on his physician's advice and treatment or, knowing that the physician has rendered poor treatment, but continues treatment in an effort to allow the physician to correct any consequences of the poor treatment, the continuous course of treatment doctrine operates to toll the statute of limitations until the treatment terminates at which time running of the statute begins.

*Harrison v. Valentini,* 184 S.W.3d 521, 525 (Ky. 2005).

15

Defendants cite *Harrison* as standing for the proposition that the continuous treatment doctrine tolls the statute of limitations only when the continuing care is performed by the same physician, and not simply the same medical center. (DE 27, at 15). Here, defendants argue that the doctrine does not apply, because Taylor was treated originally by Dr. Hobbs, and then by subsequent, and different, doctors working for PMC. *Id.* at 15-16.

This Court does not read *Harrison* as resolving whether the treating physician must be the same throughout the course of treatment, or whether differing physicians connected through the same medical center satisfy the doctrine. *See generally Harrison*, 184 S.W.3d at 525 (discussing limitations of the doctrine based on good faith of the patient). This Court does not find, and the parties do not cite a Kentucky case that has directly answered this question in the medical malpractice context. Within *Harrison*, the Kentucky Supreme Court does cite to analogous authority allowing the doctrine to toll the statute of limitations for legal malpractice where a client was represented by multiple members of the same law firm. *Harrison,* 184 S.W.3d at 524 (citing *Alagia, Day, Trautwein & Smith v. Broadbent,* 882 S.W.2d 121, 123 (Ky. 1994)). But it is clear that the doctrine does have a limit, and does not toll the statute of limitations when treatment takes place at two different facilities having only a tenuous connection. *See e.g., Mullins v. Graber,* 2016 WL 4098760, 3 (Ky. Ct. App. 2016) (finding no application for the doctrine when patient received treatment at UK Medical Center and Department of Corrections simply because both were state entities).

Due to the posture of this case, however, this Court must construe "ambiguities in the controlling state law in favor of the non-removing party [and] [a]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne,* 183 F.3d at 493 (quoting *Alexander,* 13 F.3d at 949). As such, the fact that Kentucky courts have not specifically addressed the connection required between initial and subsequent treating physicians for application of the

16

continuous course of treatment doctrine, must be construed in favor of the plaintiff and remand.

## 2. Disputed questions of fact exist

Even if the continuous course of treatment doctrine was found not to apply, defendants have failed to prove that the statute of limitations prevents plaintiff Taylor from having a colorable claim against PMC under Kentucky law. Similar to plaintiff Wolford, disputed questions of fact exist and the inferences drawn from those facts by the defendants are best resolved by a jury, and favor remand.

Defendants argue that Taylor knew by September 2014, that Dr. Hobbs had trouble inserting the Essure device on the right side during implantation. (DE 27, at 15). For proof, defendants cite plaintiffs' complaint at paragraph 397, showing that Taylor "reported that Dr. Hobbs had difficulty placing the Essure coil on the right side," when presenting to the emergency room with pain on June 28, 2016. (DE 27, at 15). However, knowledge that Dr. Hobbs' had difficulty placing the device is different from knowledge that the device was negligently placed, or knowledge that Taylor was injured from placement. In any event, proof that Taylor knew of the difficulty at an emergency room visit in 2016 does little to prove that she knew of the difficulty prior to September 22, 2015—the date necessary to show a violation of the Kentucky statute of limitations.

As with Wolford, defendants reference the early onset of Taylor's pain and suffering, arguing that this contributed to her knowledge that the Essure procedure had been defective. (DE 27, at 15). First, such an argument rests on an inferential leap, which must be drawn in favor of Taylor at this stage. Second, "when [Taylor's] pain and suffering began is not dispositive…[w]hat matters is when she should have realized that she had been wronged." *See Williams,* 2013 U.S. Dist. LEXIS 281, 15-17.

Defendants point to a Hysterosalpingogram (HSG) test from 2013 showing displacement of the Essure device on the right side as evidence that Taylor did know, and should have known, of her injury from PMC. (DE 27, at 15; DE 30-1, at 1284). While the HSG test did show that the "right stent appears to be displaced," Taylor's knowledge of the displacement is heavily contested. Taylor argues that she was never told by any healthcare provider of the displacement, and "PMC's failure in this regard *is exactly why she became pregnant*." (DE 30, at 2). Further, Taylor points to notes written by a PMC nurse detailing a conversation between the two occurring on December 17, 2013, and allegedly showing Taylor's and the nurse's lack of knowledge as to misplacement. The nurse wrote:

> Patient states that she had ESSURE precedure [sic] June 26, 2013 and had a depo injection at that time. Patient states that she has not had a period since then. Patient had HSG on 10/1/13 that confirmed placement and no spill of contrast through tubes.

(DE 30-2, at 1286).

The exchange of information between Taylor and PMC regarding placement of the Essure device, and the point at which Taylor learned that the device had been improperly placed, is a question of fact in heavy dispute. In reviewing fraudulent joinder, disputes of fact are to be drawn in favor of the plaintiff and remand. *Coyne,* 183 F.3d at 493.

Finally, defendants point out that Taylor learned she was pregnant in September of 2014. (Pl. Compl. at ¶400). Defendants' argue that Taylor thereby knew of PMC's role in the Essure procedure, and the failure of that procedure by 2014. (DE 27, at 15). But while this may establish that Taylor knew there had been some type of failure with the device, it does not establish that she knew it to be PMC's placement of the device that harmed her. *See Wiseman,* 37 S.W.3d at 712 ("To discover an injury, a plaintiff must know two things: (1) that she has been wronged; and (2) the identity of the person who wronged her"). As did Wolford, plaintiff Taylor vigorously denies having been told or otherwise knowing, prior to

September 22, 2015, that it was misplacement of the device by PMC that led to her injuries. (DE 30, at 1-7).

The defendants have not proven that the Kentucky statute of limitations prevents Taylor from making out a colorable claim against PMC. Specifically, the defendants have pointed to no facts preventing a reasonable jury from concluding that Taylor did not and should not have known of PMC's role in her injury—their alleged malpractice in placing the device—before September 22, 2015. At best, the defense asks this Court to infer such knowledge from other facts within the record, facts that are disputed by Taylor. While the defendants may ultimately be correct as to knowledge, such disputes are best resolved by juries, not a court reviewing fraudulent joinder. *See Williams,* 2013 U.S. Dist. LEXIS 281, 15-17; *see also Elam,* 594 F.3d at 466-467.

### III. Conclusion

The defendants have not carried their burden of showing that this Court has original jurisdiction. Original jurisdiction exists through either diversity of citizenship, *see* 28 U.S.C. §§ 1332(a) and 1441(b), or federal question jurisdiction, *see* 28 U.S.C. §§ 1331 and 1441(a). Finding neither, this Court must remand.

Accordingly, it is hereby **ORDERED** as follows:

(1) This matter is **REMANDED** to the docket of the Pike County Circuit Court;

(2) All remaining motions are **DENIED AS MOOT**; and

(3) This case is **STRICKEN** from the Court's active docket.

Dated November 27, 2017.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY